ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/23/09 -73

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                              :
GLAZER CAPITAL MANAGEMENT, LP,                                :
GLAZER OFFSHORE FUND, LTD., and                               :
BUTTERFIELD TRUST (BERMUDA)                                   :    09 Civ. 4207 (SHS)
LIMITED, as trustee for HFR MA SELECT                         :
OPPORTUNITY MASTER TRUST                                      :    OPINION & ORDER
                                                              :
                        Plaintiffs,                           :
                                                              :        98270
            -against-                                         :
                                                              :
ELECTRONIC CLEARING HOUSE, INC.,                              :
JOEL M. BARRY, and CHARLES HARRIS                             :
                                                              :
                        Defendants.                           :
                                                              :
----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

        This action, which alleges New York state law fraud and negligent

misrepresentation claims, was recently removed to this Court pursuant to 28 U.S.C. §

1441 from New York Supreme Court, New York County, by the defendants, who assert

two separate bases for removal. First, they claim the litigation involves citizens of

different states and seeks damages in excess of $75,000, thus falling within this Court's

diversity jurisdiction. 28 U.S.C. § 1332. The second basis for removal, according to

defendants, is that the state law claims turn on the construction of federal securities laws

and thus raise a "substantial federal question" sufficient to confer jurisdiction in this

Court pursuant to 28 U.S.C. § 1331.

        Plaintiffs now seek to remand the case back to New York State Supreme Court,

contending that complete diversity does not exist and that the complaint alleges purely

state law claims that do not turn on, or in any way involve, construction or application of

federal law.  Because the Court finds that the parties are not diverse and a federal

question is not raised by the complaint, this action was not properly removed from state

court.  Therefore, plaintiff's motion to remand the case back to state court is granted.

## I.      BACKGROUND

Unless otherwise noted, the following facts are taken from the complaint and are

presumed to be true.

### A.      The Parties

Plaintiff Glazer Capital Management, LP is a limited partnership with its primary

offices in New York.  Plaintiff Glazer Offshore Fund, Ltd. also maintains primary offices

in New York, and plaintiff Butterfield Trust (Bermuda) maintains its primary office in

Hamilton, Bermuda.  (Compl. ¶¶ 2, 3.)  All three are investors in the stock of defendant

Electronic Clearing House, Inc. ("ECHO").  (Id.)

ECHO is incorporated under the laws of the state of Nevada and maintains its

corporate headquarters in California.  (Id. ¶¶ 4, 8.)  According to the complaint, ECHO

was a "leading provider of electronic payment and transaction processing services," and,

in that capacity, provided services such as "debit and credit card processing, check

guarantee, check verification, check representment, and check collection."  (Id. ¶ 8.)

At all relevant times, defendant Joel M. Barry was ECHO's Chief Executive

Officer and Chairman of its Board of Directors.  Defendant Charles Harris was ECHO's

President and Chief Operating Officer.  (Id. ¶¶ 5-6.)  The complaint is silent as to the

residency of either Barry or Harris.

2

B.     The Proposed ECHO-Intuit Merger, and Defendants' Alleged False
Statements

The complaint centers on defendants' announced but ultimately unconsummated

merger agreement with non-party Intuit, Inc. (Id. ¶ 1.)  Specifically, the complaint

alleges that ECHO made materially false or misleading statements about its own financial

condition and failed to disclose an ongoing investigation by federal prosecutors in the

months leading up to the proposed merger, knowing that truthful and complete disclosure

would entitle Intuit to terminate the merger agreement. (Id.)  Plaintiffs contend they

purchased ECHO stock in reliance on those false statements and omissions—and thus, in

reliance on the understanding that the merger would occur.  When the truth about

ECHO's financial condition and the federal investigation emerged, the proposed merger

collapsed, and the price of ECHO's stock fell, thereby allegedly harming plaintiffs as

shareholders. (Id. ¶¶ 20, 26.)

According to the complaint, merger negotiations between ECHO and Intuit began

in 2006. (Id. ¶ 11.)  While those talks were ongoing, Congress enacted the Unlawful

Internet Gambling Enforcement Act of 2006 ("Internet Gambling Act"), which sought to

reduce illegal online gambling by prohibiting the acceptance of any payment instrument

for online gambling and requiring online payment processors, such as ECHO, to identify

and block financial transactions related to internet gambling. (Id. ¶¶ 11, 13.)  The

complaint alleges that, shortly after the Act's passage, defendants issued a press release

stating that ECHO was "aware that this legislation . . . could affect" its business but that

"we anticipate being able to recover the lost . . . revenue" based on the "continuing

growth" of other areas of its business. (Id. ¶ 12.)  Plaintiffs contend those statements

were materially false or misleading because, in fact, the Act posed a significant threat to

3

ECHO's revenues and that ECHO knew, or should have known as much.  (Id. ¶¶ 9-10, 19.)

Merger talks continued after passage of the Act, and, in January 2007, ECHO and Intuit submitted the merger agreement and a proxy statement to the SEC.  Those materials subsequently were distributed to shareholders.  (Id. ¶ 14.)  According to the complaint, the proxy statement was false or misleading in two respects: first, the proxy statement materially understated the impact the Internet Gambling Act would have on ECHO's revenues.  (Id. ¶¶ 14, 19, 21-22, 27.)  Second, the proxy statement failed to disclose that ECHO was at that time under investigation by the U.S. Attorney's Office for the Southern District of New York concerning its involvement with illegal internet gambling websites.  (Id. ¶ 24.)

According to the complaint, those misstatements and omissions were of particular significance to shareholders and the public because each bore directly on the likelihood that the merger would be consummated.  For example, pursuant to the proposed merger agreement, ECHO was required to represent that "[n]o investigation  or review by any Governmental Entity is pending or . . . threatened."  (Id. ¶ 17.)  According to the complaint, at the time the proxy statement was released, defendants were not only aware of the pending governmental inquiry but were already cooperating with the U.S. Attorney's Office as part an agreement with that office.  (Id. ¶ 24.)

Similarly, the merger agreement allowed Intuit to terminate the merger if ECHO's losses resulting from the passage of the Internet Gambling Act exceeded a certain percentage of its total revenues—that is, if the Act and any ensuing loss constituted a "materially adverse effect" as defined by the agreement.  (Id. ¶ 16.)  By allegedly

4

purposefully understating the potential impact of the Act, defendants thus materially mislead Intuit—and ECHO shareholders—about the likelihood that a "materially adverse event" would occur and therefore that the merger would in fact be consummated. (Id. ¶¶ 1, 19.)

Plaintiffs also allege that defendants made similar misrepresentations and omissions in "direct communications" with an individual, who, according to the complaint, made all investment decisions for the plaintiffs. (Id. ¶ 20.) Plaintiffs contend their decision to purchase ECHO stock was based on the "material misrepresentations and omissions" repeatedly made by defendants during the course of conduct described above. (Id. ¶ 20.)

While the complaint does not specify when plaintiffs purchased ECHO stock, on March 27, 2007, federal prosecutors publicly announced that, for some time, they had been investigating ECHO's involvement in "illegal transactions with online gaming sites," that ECHO had been cooperating with that investigation "[s]ince January 2007," and that the U.S. Attorney's Office was entering into a non-prosecution agreement with ECHO pursuant to which ECHO would continue to cooperate with prosecutors and disgorge more than $2 million in profits earned from illegal internet gambling. (Id. ¶ 24.) According to the complaint, it was also becoming apparent that ECHO's losses stemming from the Act would be substantially higher than initially reported—subsequent disclosure of ECHO's first-quarter earnings for 2007 showed a drop of "more than 20%" in revenues from the previous year. (Id. ¶ 27.)

Accordingly, on March 27, 2007 ECHO announced that it and Intuit had agreed to terminate the merger agreement.  According to the complaint, that announcement caused a substantial drop in the price of ECHO's stock.  (Id. ¶ 26.)

        C.      This Action

Exactly two years later—on March 26, 2009—plaintiffs commenced this action in New York State Supreme Court, raising New York state law claims of negligent misrepresentation and common law fraud.  Defendants then removed the action to this Court, contending removal was proper pursuant to subsection (a) of 28 U.S.C. § 1441 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, and that removal was also proper pursuant to subsection (b) of 28 U.S.C. § 1441 because the complaint, while facially pleading state law claims, actually turns on the interpretation or construction of the federal securities laws, thus triggering this Court's federal question jurisdiction.

Plaintiffs have now moved to remand the case to state court arguing, first, that complete diversity does not exist, and second, that the complaint validly alleges state law claims.  Plaintiffs are correct on both fronts.  Plaintiffs also seek attorneys fees incurred as a result of the removal.[1]

## II.    DISCUSSION

By statute, a state court defendant may remove to federal court any "civil action" over which a federal court has "original jurisdiction."  28 U.S.C. § 1441.  The removing party bears the burden of proving that it has met the requirements for removal.  Cal. Pub.

---

[1] Although defendants claim the action was not removed in a timely fashion, in fact it was: 28 U.S.C. § 1447(c) grants any party seeking remand the right to file such a motion within "30 days of the filing of the notice of removal."  Because this motion was in fact filed within 30 days of the filing of the notice of removal, the motion is timely.

Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). Accordingly, to establish that this action was properly removed, defendants must show that the action falls within either this Court's diversity jurisdiction or its federal question jurisdiction.

      A.     Diversity Jurisdiction Does Not Exist

Defendants first seek to remove on the basis of this court's diversity jurisdiction, contending that, on the face of the complaint, complete diversity of citizenship exists and that the amount in controversy exceeds $75,000. The complaint indeed does allege facts that support a finding of diversity jurisdiction. Specifically, the complaint alleges that plaintiffs Glazer Capital Management, LP and Glazer Offshore Fund, Ltd. each "maintain their primary offices in New York" and plaintiff Butterfield Trust maintains its primary offices in "Hamilton Bermuda," while defendants are alleged to be residents of Nevada and California. No party disputes that the amount in controversy exceeds $75,000.

However, in response to this motion, plaintiffs for the first time contend that one of the limited partners in Glazer Capital Management, LP resides in California—the same state in which defendant ECHO maintains its principal place of business—and have submitted affidavits attesting to that fact. (Decl. of Paul J. Glazer dated May 27, 2009 ¶ 3; Decl. of Steven H. Pokress dated Nov. 11, 2009.)

Because a limited partnership is a resident of each state in which one of its partners resides, see Carden v. Arkoma Assoc., 494 U.S. 185, 192-95 (1990); Handlesman v. Bedford Village Assocs., 213 F.3d 48, 52 (2d Cir. 2000), in light of those affidavits, defendants now "concede that that diversity jurisdiction does not exist in this action." (Letter from Juan A. Skirrow, Counsel to Defendants, to Hon. Sidney H. Stein dated Nov. 19, 2009.)

B.     Federal Question Jurisdiction Does Not Exist

Absent diversity of citizenship, federal courts have original jurisdiction only over cases that present federal questions, Fax Telecommunicacaciones, Inc. v. AT&T, 138 F.3d 479, 486 (2d Cir. 1998), and, a federal question exists "only when a plaintiff's well-pleaded complaint raises issues of federal law." Metro Life. Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).

Defendants concede, as they must, that the complaint facially alleges only state law claims. However, they contend that the "gravaman" of those claims is that defendants violated the federal securities laws, thus raising substantial federal questions sufficient to fall within this Court's federal question jurisdiction.

As a general rule, a plaintiff is the "master of the complaint" and is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." Finance & Trading, Ltd. v. Rhodia S.A., No. 04 Civ. 6083, 2004 U.S. Dist LEXIS 24148, at *11 (S.D.N.Y. Nov. 30, 2004) (citing Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998)).  However, the Second Circuit has made clear that a plaintiff may not purposefully avoid removal "by framing in terms of state law a complaint the real nature of [which] is federal," Marcus, 138 F.3d at 55, and has identified limited circumstances in which a state law claim may nonetheless trigger a federal court's jurisdiction pursuant to 28 U.S.C. § 1331.  Notably, removal may be proper where "the state action simply provides the vehicle for the vindication of rights . . . and relationships created by federal law." Donovan, 106 F. Supp. 2d at 517 (quoting W. 14th St. Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188, 193 (2d Cir. 1987)).  In such cases, the critical question for the court is whether the state law "cause of action

8

poses a substantial federal question" by, for example, requiring interpretation of federal

law. D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93, 99 (2d Cir. 2001).

Here, defendants contend that plaintiffs' state law claims are "rooted in alleged

violations" of federal securities laws and turn on duties created by those laws, (Defs.'

Mem. of Law in Opp. to Remand at 4), thus raising a "substantial federal question"

sufficient to warrant removal. The argument is without merit: the complaint alleges two

classic state law claims—fraud and negligent misrepresentation—both of which turn on

duties and seek to vindicate rights created by New York law, notably "the right not to be

lied to in a fashion that causes reliance and results in financial injury, a right possessed by

all New York residents." Finance & Trading, 2004 U.S. Dist. LEXIS 24148, at \*21.

That plaintiffs could have brought federal securities law claims based on the factual

allegations contained in the complaint is not sufficient to convert the state law claims into

federal questions. Id.; see also Marcus, 138 F.3d at 52.

Nor can defendants properly rely on the opinion in D'Alessio, where the Second

Circuit found removal proper because the state law claims presented there "necessarily

turn[ed] on some construction of federal law." D'Alessio, 258 F.3d at 99.  In D'Alessio,

"the gravamen" of the state law claims was "that [defendants] conspired to violate the

federal securities laws . . . and failed to perform [their] statutory duty, created under

federal law." D'Alessio, 258 F.3d at 101. Here, by contrast, the gravamen of plaintiffs'

complaint is that defendants made materially false statements to them in a manner

prohibited by New York law and in violation of duties created by New York law. No

construction or interpretation of federal law is required. Cf. Finance & Trading, 2004

U.S. Dist. LEXIS 24148, at \*20 ("Assessing whether defendants committed fraud and

negligent misrepresentation that happened to occur during a sale of securities does not implicate any federal law."); Sung v. Wasserstein, No. 05 Civ. 5785, 2006 U.S. Dist. LEXIS 5785, at *35-36 (S.D.N.Y. Feb. 17, 2006) ("[T]hat the [allegedly false] statements were made in a federally required document does not change the inquiry [into] whether, standing alone, they were false or misleading . . . under state law.").

Defendants thus fail to establish the existence of a federal question sufficient to invoke the jurisdiction of this Court. Moreover, because the requirements for diversity jurisdiction also are not met, there is no statutory basis for removing this action. This litigation must be remanded back to state court.

      C.     Fees

In addition to remand, plaintiffs seek costs, including attorneys' fees, incurred as a result of the attempted removal. Pursuant to 28 U.S.C. § 1447(c), a district court ordering remand of a case back to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Absent "unusual circumstances," courts award fees "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

Here, plaintiffs had a "reasonably objective" basis for seeking removal—on the face of the complaint, complete diversity existed and the amount in controversy exceeded $75,000. Thus, defendants appeared on the fact of the complaint to have a statutory right to remove pursuant to 28 U.S.C. § 1441(a). Defendants do not identify—and the Court does not find—any "unusual circumstances" present here that would warrant an award of

costs and fees. Accordingly, the request for costs and fees pursuant to 28 § U.S.C. 1447(c) is denied.

## III.    CONCLUSION

Because the Court finds that it lacks original jurisdiction over this action pursuant to either 28 U.S.C. §§ 1331 or 1332 and therefore that this action cannot properly be removed to federal court, plaintiffs' motion to remand the action to New York State Supreme Court, New York County, is granted, and plaintiffs' motion for fees and costs pursuant to 28 § U.S.C. 1447(c) is denied.

Dated: New York, New York
      November 23, 2009

SO ORDERED:

Sidney H. Stein, U.S.D.J.

11